JOHN S. ELLIOTT *v.* JONAS B. AIKEN & TRS.

A mere trespass by the lessor without an eviction, will not cause a suspension of the rent. But a surrender of the possession to the lessor and an acceptance and re-entry by him, is a good answer to a claim for rent, although such surrender is not by deed.

In such case the delivery of the key of the building demised, by the lessee to the lessor, and its acceptance by the latter, is competent evidence on the question of surrender.

COVENANT BROKEN, for rent of a room in the plaintiff's brick building on Manchester street, directly over the room now occupied by Wm. H. Gilmore for printing, with the appurtenances.

Plea, general issue with a brief statement, a copy of which is hereto annexed and made a part of this case.    It was agreed that the engine, referred to in the brief statement, was not the property of the plaintiff, but was owned and controlled by others.    On motion of the plaintiff, the brief statement was rejected, with leave to file a new brief statement in substance, that, during the continuance of the lease, there had been a breach on the part of the plaintiff of the covenant for quiet possession. And that the lease had been surrendered or cancelled.    To which ruling the defendant excepted.    The defendant then moved for a continuance of the action, on the ground of the absence of a material witness, and in his affidavit, in support of the motion, set forth that "I expect, if present," he (the witness) would testify "that he was present and saw me pay the plaintiff the amount due him, Oct. 15, 1860, and that I then returned him the key of the premises for which he now claims rent after that time, who said it was all right, and that he, (the witness) then understood that I had surrendered the occupation of the premises to the plaintiff, and that the plaintiff had accepted of them, and that I was discharged from further claim on account of the same," and states the reason for his belief the witness would so testify, and the effort he had made to get his evidence.    The plaintiff objected that the affidavit was not sufficient cause for continuance, on the ground that the evidence stated in the affidavit was not competent to prove a surrender of the lease.    For the pur-

pose of determining the law in the case before trial, the Court ruled that the evidence described in the affidavit was not admissible, and the defendant excepted.   A copy of the lease is to be furnished to the Chief Justice and may be referred to in argument.

Ordered, that the questions of law, arising upon the foregoing case, be reserved for the whole court, the case to be discharged after the decision thereof, if the defendant shall so elect.

### (*A Copy of Brief Statement.*)

The plaintiff will take notice, that on the trial of the above issue, the defendant will prove that before the alleged execution of said indenture, a steam engine had been placed in the plaintiff's said brick building, which was connected by means of belts and bands with the machinery used and occupied by the defendant in the room aforesaid, and supplied motive power for the operation of the same.   That subsequently to the execution of said pretended indenture, the plaintiff agreed with the said defendant that no power should be taken from said steam engine to the disadvantage of the defendant, but that the plaintiff, notwithstanding said agreement, permitted said power to be diverted and to be used for driving a circular saw and planing machine, a coffee and spice mill, and other machinery, to such disadvantage and loss of the plaintiff in the business which he was conducting in said room, that the occupation of the same, prior to the 14th day of October, 1860, became and was of no use or profit to him, but, on the contrary, was only his loss and detriment.

2. That the plaintiff, during the defendant's occupation of said room, entered the same without the license or permission of the defendant, cut through the floors and ceiling thereof for the purpose of conducting leathern belts and bands through said room to the various machinery aforesaid with which the motive power of said steam engine was connected, to the detriment and wrong of said plaintiff.

3. That the defendant ascertained after his occupation of said room commenced, that the said brick building was unsafe and dangerous to the occupants thereof and their property by reason of the defective walls and posts thereof, the weak and leaky condition thereof and the dangerous condition of the steam engine aforesaid, and

4. That, therefore, the plaintiff having disregarded his agreement aforesaid, and the defendant having incurred great loss by reason thereof, and being imperilled as aforesaid, on the 15th day of October, 1860, paid to the plaintiff the full rent due from him to said plaintiff for the occupation of said room up to that time, and that thereupon, the defendant quit the said premises with the knowledge and consent of the plaintiff, and thereupon delivered up the premises with the key thereof to the plaintiff, who accepted the same and discharged and released the plaintiff from all obligation arising under and by virtue of the covenants contained in said supposed indenture.

*S. N. Bell*, for plaintiff.

The brief statement was properly rejected, because the first and third

grounds of defence, set up therein, contain matters not constituting any defence, and tending to prejudice the minds of the jury.

The first ground of defence stated, is, that, subsequently to the execution of the lease, the plaintiff agreed that no power should be taken from the steam engine referred to, to the defendant's disadvantage, and that the plaintiff failed to comply with his agreement in that particular.

The agreement, if made, is alleged by the brief statement to have been a new contract, entirely independent of the lease, not connected with it, and made after the execution of the lease. Upon such an agreement the plaintiff might be answerable in damages for a breach of it, but it constitutes no defence to an action of covenant for the rent reserved in the lease. It is not a failure of any of the plaintiff's covenants in the lease, so that the defendant is discharged from his covenants. It gave at most but a claim for unliquidated damages which cannot be used as a set-off. The lease was of " the room in my brick building on Manchester street, directly over the room now occupied by Wm. H. Gilmore, for printing, with the appurtenances, &c."; there was no reference to the steam engine, or to the use to be made of the premises, except a covenant on the part of the defendant that the rooms should be used only for the purpose of working iron and steel. The failure to furnish power is not such a neglect of the covenants either express or implied on the part of the landlord as to constitute a defence to the plaintiff's claim. *Moffat* v. *Smith*, 4 Comst. 126 ; *Gilhooley* v. *Washington*, 4 Comst. 217 ; *Cram* v. *Dresser*, 2 Sandf. Sup. Ct. 120 ; *Allen* v. *Pell*, 4 Wend. 505 ; *Watts* v. *Coffin*, 11 Johns. 495 ; *Edgerton* v. *Page*, 20 N. Y. (6 Smith,) 281 ; 1 Hilton, (N. Y. C. P.) 320 ; *Tattersall* v. *Hass*, 1 Hilton, 149 ; *Academy of Music* v. *Hackett*, 2 Hilton, (N. Y. C. P.) 217. An agreement on the part of the landlord, indorsed on the lease, to make certain improvements, in consideration of the letting, is an independent agreement, a breach of which does not discharge the lease. *Ellis* v. *McCormick*, 1 Hilton, (N. Y. C. P.) 313 ; so of a parol agreement, *Brady* v. *Peiper*, 1 Hilton, (N. Y. C. P.) 61. Where the terms of a lease are in writing, parol evidence cannot be given to show that the landlord at the time of executing it promised to repair. *Cleaves* v. *Willoughby*, 7 Hill 83.

The supposed agreement in reference to the power to be taken from the steam engine, was without consideration and void. Chitty on Contracts, 26, and cases there cited. A promise to repair, made by a lessor after the letting, cannot be enforced for want of consideration, and therefore a breach of such promise cannot be availed of as a defence in an action against the guarantor of a lease. *Gottsberger* v. *Radway*, 1 Hilton, (N. Y. C. P.), 342.

The third ground stated constitutes no defence. In the absence of express stipulation, there is no implied obligation on the landlord to repair. Smith's Landlord and Tenant, 206 ; *Belfour* v. *Weston*, and other cases cited ; *Gott* v. *Gandy*, 2, E. and B., (75 E. C. L.) 843 ; Jackson's Landlord and Tenant, 155. Nor is there an obligation implied in the letting of a house or of land that it is or shall be reasonably fit for

habitation, occupation, or cultivation.   Nor does the law imply a contract, still less a condition, on the demise of real property, that it is fit for the purpose for which it is let.    *Cleaves* v. *Willoughby*, 7 Hill 83 ; Smith's Landlord and Tenant, 206 ; *Hart* v. *Windsor*, 12 M. &. W. 68 : *Sutton* v. *Temple*, Ibid, 52 ; *Mayer* v. *Moller*, 1 Hilton, (N. Y. C. P.) 491 ; *Dutton* v. *Gerrish*, 9 Cush. 89 ; *Foster* v. *Peyser*, 9 Cush. 242.

Nor is there any implied duty on the owner of a house, which is in a ruinous and unsafe condition, to inform a proposed tenant that it is unfit for habitation.     *Keates* v. *Earl of Cadogan*, 10 C. B. 59, (70 E. C. L.) 591.

As to the second ground of defence.   It is not every interference with the possession of the tenant that constitutes an eviction ; to have that effect it must be such as to deprive the tenant of the possession.    *Edgerton* v. *Page*, 20 N. Y. (6 Smith) 281 ; *Randall* v. *Alburtis*, 1 Hilton, (N. Y. C. P.) 285 ; *Hazlett* v. *Powell*, 30 Penn. Stat. 293 ; *Palmer* v. *Wetmore*, 2 Sandf. Sup. Ct. 316 ; *Bennet* v. *Bittle*, 4 Rawle, 339 ; Jackson's Landlord and Tenant, 189, and cases cited.

If there was anything in the second ground of defence, it amounted to a breach of the covenant for quiet possession, and the ruling of the court in reference to it was correct.

The fourth ground of defence was, in substance, that the lease had been cancelled and surrendered on the 15th of Oct. 1860.     And as to the rent becoming due after that date, might be a defence, if proved.

The brief statement was entire, but being defective in part, was properly rejected.     The leave to file a new brief statement protected all the rights of the defendant.

The affidavit for the continuance was a matter addressed to the discretion of the court ; the only fact set out in it, was that the defendant expected the witness to testify " that he was present and saw me, (the defendant,) pay the plaintiff the amount due him, Oct. 15, 1860, and that I, (the defendant,) then returned him the key of the premises, for which he now claims rent after that time, and said it was all right."     What the witness understood by the transaction was unimportant ; the facts stated, if proved, did not amount to a surrender.     Removal by a tenant and giving the key to the landlord, before the expiration of the term, does not by operation of the law amount to a surrender of the term.     *Townsend* v. *Albrees*, 3 E. D. Smith, (N. Y.) 560 ; *Prentiss* v. *Warne*, 10 Miss. 601.

Neither did the affidavit show due diligence on the part of the defendant in procuring the testimony of the witness.

*George, Foster & Sanborn*, for defendant.

The brief statement offered by the defendant presents such a condition of facts as affords several grounds of defence to the plaintiff's claim. These are : 1st—A breach, by the landlord, of his covenant for quiet enjoyment ; 2d—An eviction of the tenant from the premises, by the landlord ; 3d—A discharge by the landlord of the covenant by the ten-

ant to pay further rent, upon the surrender of the premises by the tenant and the acceptance of the same by the landlord.

The first and third of these defences would seem to be properly made under the brief statement suggested by the Judge at *Nisi Prius;* and the second defence being, as we regard it, synonymous with the first, would seem also to be admissible.    Indeed we see not why they are not all equally legal and proper under either form of the proposed pleadings.

A covenant for quiet, useful, and beneficial enjoyment, is implied in every lease, whether it be under seal, or parol; and this covenant imports that the tenant shall have the free use of the entire premises, and if he be ousted from the same, or any material part thereof, he may treat it as an eviction from the whole premises, and he will be no longer responsible for rent. Taylor's Land. & Ten. 150; *Etheredge* v. *Osborne,* 12 Wend. 529.

And it makes no difference that, in this case, the steam engine was not the property of the plaintiff, but was owned and controlled by others.    Its use was not only permitted by the landlord for its original purposes, but the motive power thereof, to which the defendant was entitled, was, after his occupation commenced, taken by the plaintiff's permission and directed to entirely other and new purposes.    This permissive wrong was a breach of the landlord's covenant for quiet enjoyment, and amounted to an eviction.

It is a general and well settled rule that an eviction, in fact or *effect,* which destroys or renders the premises useless, in consequence of which the tenant abandons them before the rent becomes due, may be set up in defence against a recovery of rent, and this extends to any acts of disturbance which effect the same thing.    The undermining or weakening of the walls by adjacent excavations, permitting leaky and filthy water pipes to run through the demised premises, renting adjoining rooms under the same roof for the purposes of a brothel or a drinking saloon, are among the cases reported of acts by the landlord amounting to a virtual expulsion of the tenant.    The reason of the doctrine seems to be, that the tenant having been deprived of the quiet and beneficial enjoyment of the premises by the wrongful act of the landlord, the consideration of the agreement to pay rent has failed.    Taylor's Land. & Ten. 150 and cases cited; *ib.* 183, 184, 316; *Halligan* v. *Wade,* 21 Ill. 470; *Christopher* v. *Austin,* 1 Kernan 217; *Dyett* v. *Pendleton,* 8 Cow. 728; *Edgerton* v. *Page,* 20 N. Y. (6 Smith) 281; S. C. 1 Hilton (N. Y. C. P.) 320; 2 Saund. Pl. & Ev. 1180; *Lewis* v. *Payne,* 4 Wend. 423; Co. Lit. 148, b.    And such an eviction from a *part* of the premises discharges the whole rent.    Taylor's Land. & Ten. 183, 184; 3 Kent's Com. 464; 1 Saund. Rep. 204, note 2; *Bennett* v. *Bittle,* 4 Rawle 339; *Dalston* v. *Reeve,* 1 Ld. Raym. 77; *Halligan* v. *Wade,* 21 Ill. 470; *Hegeman* v. *McArthur,* 15 N. Y. (1 Smith) 147; *Upton* v. *Townsend,* 33 Eng. L. & Eq. 212; *Leishman* v. *White,* 1 Allen 489; *Shumway* v. *Collins,* 6 Gray 227.    This defence is applicable as well to the action of *covenant* for rent as to the equitable action of assumpsit for use and occupation. *Dyett* v. *Pendleton,* 4 Cow. 533.

2. The evidence stated in the affidavit was competent to be considered by a jury, as tending to show a surrender of the premises by the tenant, and an acceptance of the same by the landlord.    "The defendant may show that the landlord has determined the occupation, by accepting the key to the house, &c., even in the middle of a quarter, and then the landlord's remedy is gone, as to the rent due from that time." 2 Saund. Pl. & Ev. 1179, and cases cited.

Without reference to the *understanding* of the witness as to the effect of the transaction, the facts exhibited and the remark of the landlord were surely proper·for the consideration of a jury.    Not only taken by themselves, but much more when considered in connection with all the other circumstances detailed in the brief statement, they would seem to indicate quite clearly the consent of both parties to the surrender of the occupation, and the intention of the landlord to determine the tenancy.

BELLOWS, J.  The demise is of the room and its appurtenances for three years, and the brief statement alleges, that, before the execution of the lease, a steam engine had been placed in the building, which, by means of belts and bands, supplied the motive power for the machinery used and occupied by the defendant; and it then alleges, that, after the execution of the lease, the plaintiff agreed with the defendant that no power should be taken from the steam engine to the disadvantage of the defendant; that the plaintiff had permitted it to be done, so that prior to Oct. 14, 1860, the occupation of the room became of no value to the defendant.

Assuming the motive power for defendant's machinery to have been included in the lease, still the ground of defence stated is not the withholding of that, but rather the breach of the subsequent agreement, for which another remedy is to be sought; and therefore in respect to this ground of defence the brief statement is defective.

So it is not a good defence that the plaintiff entered the room and cut through the floors and ceiling for the purpose of conducting belts to other machinery, even although it might occasion some injury to the defendant, unless it was of such a character as justly to cause the lessee to give up the possession of the premises; for it would be entirely unjust to permit the tenant to have a beneficial use of the property without making any compensation; as was held in *Edgerton* v. *Page*, 20 N. Y. Rep. 281, where the defence set up was, that the water pipes from the upper stories of the building, in which the room leased was situate, were suffered by the lessee to become leaky, by means of which large quantities of water and filth were discharged into defendant's room. Taylor's Land. & Ten. sec. 388.

It seems to be well settled, indeed, that a mere trespass by a lessor, without an eviction, does not cause a suspension of the rent.    *Hunt* v. *Cape*, Cowp. 242.    See also *Allen* v. *Pell*, 4 Wend. 505.    This part of the brief statement is therefore defective, because it does not state an eviction, or its equivalent.

The third ground of defence is, that the building had become unsafe

and not tenantable, and that defendant had surrendered the possession to the plaintiff, who had accepted it.

Upon examining the lease there is found no stipulation on the part of the lessor to make repairs, or that the demised premises should remain tenantable, and we think none is implied from the relation. Taylor's Land. & Ten. sec. 327 to 331; *Gott* v. *Gandy*, 2 El. & Black. 845; *Hart* v. *Windsor*, 12 M. & W. 68; *Foster* v. *Peyser*, 9 Cush. 242; *Cleaves* v. *Willoughby*, 7 Hill 83; 4 Kent's Com. 465, 468, and cases. But we think that the surrender of the possession to the lessor, and the acceptance by him for the reason that the premises were not tenantable, would be a good answer to any claim for rent after such surrender.

It is immaterial, indeed, for what reason the premises were given up, provided the lessor accepted the possession and re-entered. It would stand in fact upon the same ground as an eviction by the lessor, in which case the tenant is excused from paying rent. *Russell* v. *Fabyan*, 27 N. H. 529.

Nor is it an objection that there was no written release or surrender of the tenant's interest. A mere parol agreement to surrender his term without an actual delivery of the possession to the landlord, would, it is true, avail nothing; because such surrender, by the express provisions of our statute, must be in writing. Comp. St. ch. 136, sec. 12. But an actual and continued change of possession, by the mutual consent of the parties, will amount to a surrender by operation of law. Taylor's Land. & Ten. sec. 515, and cases cited; as, where the lessee of a ferry, finding that he could not pay the rent, proposed to the landlord to manage it as his servant, and was accepted and received wages as such—it was held that this was a surrender by operation of law. *Peter* v. *Kendall & al.* 6 B. & C. 703. See also *Hall* v. *Burgess*, 5 B. & C. 333, and *Whitehead* v. *Clifford*, 5 Taunt. 518, where the landlord in the middle of a term accepted of the tenant the key of the house demised, on a parol agreement that the rent should cease, and the tenant never afterwards occupied the premises—it was decided that an action for use and occupation would not lie for rent subsequent to the accepting of the key. A similar doctrine is held in *Randall* v. *Rich*, 11 Mass. 494.

The amended brief statement sets out all of the grounds of defence that are available to the defendant, and it therefore is unnecessary to consider the sufficiency of the one originally filed.

The only question remaining is, as to the competency of the evidence in respect to the surrender of the key by the defendant; and we think it might properly be weighed by the jury in connection with other evidence of the yielding up of the possession to the plaintiff.

The question is not whether it was sufficient of itself, but whether it was admissible; and we think it clearly was so. *Whitehead* v. *Clifford*, 5 Taunt. 18; 2 Saund. Pl. & Ev. 894.

The plaintiff's counsel is undoubtedly right in the position that the motion for a continuance is addressed to the discretion of the presiding judge, but in this case the competency of the evidence was expressly reserved for this court.

With these views the case is to be discharged for further proceedings.