COX et al. v. CRYDER et al. (No. 7527.)

(Supreme Court, Appellate Division, First Department. July 9, 1915.)

1. APPEAL AND ERROR ☞173—QUESTIONS REVIEWABLE—DEFENSES NOT MADE BELOW.

In an action for rent after vacation of the premises by the tenant, the tenant cannot for the first time on appeal raise the point that he was entitled to surrender when he vacated the premises, under Real Property Law (Consol. Laws, c. 50) § 227, providing that, when a building leased is untenantable, the tenant is entitled to surrender.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1079–1089, 1091–1093, 1095–1098, 1101–1120; Dec. Dig. ☞173.]

2. LANDLORD AND TENANT ☞110—RIGHT OF TENANT TO SURRENDER—STATUTORY PROVISIONS.

That premises were less serviceable than a tenant expected them to be did not justify a surrender, under Real Property Law, § 227, authorizing the tenant to surrender where the premises are untenantable.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 366–369, 371; Dec. Dig. ☞110.]

3. LANDLORD AND TENANT ☞187—LIABILITY FOR RENT.

A landlord, agreeing to construct a building, constructed it in conformity with the requirements of the building law, and the only evidence tending to show a dangerous condition was the testimony of a witness that in his opinion the floors were liable to collapse, not owing to the weight they carried, but to the fact that the joists supporting them were not properly secured. The landlord was willing to remedy this condition. The landlord did not interfere with the premises after the tenant took possession, and the premises did not become any more dangerous after the tenant took possession than when he entered, and the tenant knew the facts before the proper term commenced, but nevertheless remained in possession for a month. *Held*, that the tenant, vacating the premises, could not defeat an action for rent on the theory that there was a breach of covenant on the part of the landlord.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 770–775; Dec. Dig. ☞187.]

4. LANDLORD AND TENANT ☞190—BREACH BY LANDLORD OF COVENANT—REMEDY OF TENANT.

Where a tenant remained in possession during the time for which no rent was reserved and for one month of the term for which rent was reserved, with knowledge of defects in the premises resulting from landlord's breach of covenant, the tenant's remedy was to counterclaim for damages in an action for rent, or to bring an independent action for breach of covenant.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 765–769; Dec. Dig. ☞190.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. APPEAL AND ERROR ⬅︎1171—DISPOSITION OF CASE ON APPEAL—DISREGARD
OF NOMINAL DAMAGES.
    The court, on appeal from a judgment for a landlord for rent, will not
    grant a new trial, or modify the judgment, because of a failure to deduct
    nominal damages recoverable by the tenant for the landlord's breach of
    contract.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4546–
    4554; Dec. Dig. ⬅︎1171.]

Appeal from Trial Term, New York County.

Action by Abraham B. Cox and another against Henry C. Cryder
and another. From a judgment for plaintiffs, and from an order
denying a new trial, defendants appeal. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-
LIN, DOWLING, and HOTCHKISS, JJ.

John M. Bowers, of New York City (Gerald S. O'Loughlin, of New
York City, on the brief), for appellant Havemeyer.

Reid L. Carr, of New York City, for appellant Cryder.

George V. Mullan, of New York City, for respondents.

LAUGHLIN, J. The plaintiffs have recovered for rent reserved
under a lease in writing of premises known as Nos. 112–114 East
Sixty-Third street, borough of Manhattan, New York. The lease
was executed by the parties hereto on the 21st day of July, 1910, but
it expressly provided that the term should commence on the 1st day
of January thereafter, and end on the 1st day of May, 1921. At
the time the lease was made there was an old building on the prem-
ises, which had been partly destroyed by fire in May, 1910, and it
was intended to reconstruct it, and it was to be used by the defend-
ants for the purposes of a garage.

It was provided in the lease that the tenant leased the premises
"with the building to be erected thereon from plans and specifications"
thereto annexed, and that the tenants were to have possession of the
first two floors on October 1, 1910, and the remainder of the build-
ing on November 1, 1910, rent free until January 1, 1911. The rent
reserved was $8,500 per annum, payable in monthly installments, and
at the time of executing the lease, or shortly thereafter, the tenants
paid the rent for the month of January, 1911. The plans and specifi-
cations annexed to the lease had been prepared pursuant to negotia-
tions between the parties. The defendants took the lease for the
benefit of a corporation known as Cryder & Co., in which they owned
nearly all the capital stock. According to the testimony the defend-
ants took possession of the first floor early in November, 1910, and
of the second floor within a week thereafter, and of the rest of the
building within a few days thereafter; but it was admitted by the
pleadings that they went into possession during the month of October,
1910.

After the defendants were given possession of the entire premises,
and prior to the 1st day of January, 1911, when the term for which
rent was to be paid commenced, they complained that the changes and
alterations and construction in certain respects had not been in ac-

cordance with the plans and specifications, and demanded that heavier floors be constructed. The plaintiffs insisted that most of the complaints were groundless, and that the floors had been constructed in accordance with the plans and specifications, but offered to remedy all defects complained of, with the exception of constructing new floors, and offered to do that at the expense of the defendants. The defendants refused to bear the expense of constructing new floors, and the negotiations between the parties with respect thereto were broken off before the 1st day of January, 1911. On the 4th day of January, 1911, the attorneys for the defendants wrote plaintiffs' brokers, stating that defendants intended to vacate the premises on the 1st day of February, 1911, for reasons pointed out in previous letters, and that the plaintiffs were at liberty to relet the premises, and in the postscript to this letter it was said that it was written without prejudice to any claim of the lessees for damages. Defendants did vacate the premises the latter part of January, 1911, and after a lapse of seven months the plaintiffs relet the premises, and then brought this action to recover the rent reserved by the lease for the seven months. The defendants pleaded a counterclaim for damages, owing to the alleged failure of the plaintiffs to make the alterations and changes in the building as agreed.

There are many errors in the charge, and the only theory upon which the judgment can be sustained is that the plaintiffs were entitled to recover for the rent, and that defendants failed to present any competent evidence in support of their counterclaim which would have warranted the jury in awarding them more than nominal damages. The court at the outset charged that, if the plaintiffs were entitled to recover the rent, then the jury need not consider the counterclaim, as there could be a recovery on the counterclaim only in the event that the plaintiffs were not entitled to recover rent, and then instructed the jury that the defendants, having entered, were not at liberty to abandon the building for the failure of the plaintiffs to complete the building according to the plans and specifications, and were justified in abandoning it only if the plaintiffs did or suffered any acts after defendants took possession which amounted to a constructive eviction, but did not define what would constitute a constructive eviction. Under these instructions it was the duty of the jury to find for the plaintiffs, notwithstanding the fact that they were not so expressly directed, for there was no evidence that the landlords did or suffered any act or acts after defendants took possession which constituted a constructive eviction. The court, without expressly instructing the jury to the effect that, if the building was so constructed that it could not be safely occupied by defendants, that would constitute a constructive eviction, gave the jury to understand that if the premises were in a dangerous condition the tenants were justified in abandoning them.

[1, 2] The appellants took no exception to the charge on this point, and did not request the court to further instruct the jury thereon, but now claim that by virtue of the provisions of section 227 of the Real Property Law, which provides that where a building leased is "de-

stroyed or so injured by the elements, or any other cause, as to be untenantable, and unfit for occupancy, and no express agreement to the contrary has been made in writing," the tenant is entitled to surrender if the injury occurred without his fault or neglect. That contention is made too late; but manifestly the evidence affords no basis for it, because the premises, while less serviceable than defendants expected, were not untenantable.

[3] It must be assumed, in view of the instructions, that the jury at least found that the premises were not in a dangerous condition, and that is clearly shown by the evidence. The building was reconstructed in conformity with the requirements of the building law, and the only scintilla of evidence tending to show a dangerous condition is the testimony of one witness to the effect that in his opinion the floors were liable to collapse, owing, not to the weight they carried, but to the fact that the joists supporting them were not properly secured and would lay over on their sides under the traction impact of the automobiles; but this condition the plaintiffs were willing to remedy. Moreover, the plaintiffs did not interfere with the premises in any manner after the defendants took possession, and the premises did not become any more dangerous after defendants took possession than they were when they first entered into possession of the respective parts of the building. If, therefore, there was any breach of covenant on the part of the plaintiffs, it existed at the time defendants took possession, and was fully known before the term proper commenced, and would, therefore, constitute no defense to an action for the rent. Kelsey v. Ward, 38 N. Y. 83; Nichols v. Dusenbury, 2 N. Y. 283; O'Brien v. Smith, 13 N. Y. Supp. 408,[1] affirmed 129 N. Y. 620, 29 N. E. 1029; Thomson-Houston Electric Co. v. Durant Land Imp. Co., 144 N. Y. 34, 39 N. E. 7; Allen v. Pell, 4 Wend. 505; Etheridge v. Osborn, 12 Wend. 529; Bentley v. Taylor (Iowa) 39 N. W. 267; Cantwell v. Collins, 6 N. Y. St. Rep. 308; McAdam on Landlord & Tenant (4th Ed.) p. 372.

[4] The argument that the tenants were unable to discover the defects until they came to store automobiles on the different floors is without force. They did not, upon making such discovery, and upon ascertaining that the landlords would not remedy the alleged defects, assert any right to remove from the premises forthwith, but, on the contrary, remained in possession not only during the period prior to the commencement of the term, and for which no rent was reserved, but *as tenants* for one entire month of the term, and in such circumstances their remedy for any breach of covenant on the part of the landlord, not amounting to an eviction, was to counterclaim their damages, or bring an independent action therefor. We are of opinion, therefore, that the plaintiffs were entitled to recover the rent reserved.

[5] The defendants offered evidence tending to show that the plaintiffs did not reconstruct the building in accordance with the plans and specifications, and presenting questions of fact with respect to their claim that the plaintiffs failed to perform their contract; but

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 59 Hun, 624.

we find no competent evidence received or offered in behalf of the defendants, tending to show substantial damages, which would warrant a recovery of more than nominal damages. The appellate court is neither required to grant a new trial nor to modify a recovery in an action such as this for a failure to deduct nominal damages. It is unnecessary, therefore, to consider the other questions arising with respect to the charge and the refusals to instruct the jury.

It follows that the judgment and order should be affirmed, with costs. Order filed. All concur.